IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 09-cv-01540-WYD-KLM

TIMOTHY J. POWNELL, an individual,

    Plaintiff,

v.

CREDO PETROLEUM CORPORATION, a Delaware corporation, and
JAMES T. HUFFMAN, an individual,

    Defendants.

_____

**ORDER DENYING MOTION TO COMPEL**
_____

This matter is before the Court on Plaintiff's Motion to Compel Production of Documents [Docket No. 79; Filed August 16, 2010] (the "Motion"). Defendant filed an Opposition to Plaintiff's Motion to Compel Production of Documents [Docket No. 81; Filed August 26, 2010] (the "Opposition") and a Supplement to Opposition to Motion to Compel Production of Documents [Docket No. 82; Filed September 1, 2010] (the "Supplemental Opposition"). The Court has reviewed the case file, the pleadings and the applicable law and is fully advised in the premises. For the reasons set forth below, the Motion is **DENIED**.

**A. Background**

According to the Amended Complaint, the heart of the lawsuit involves Plaintiff's claims for fraud and declaratory judgment relating to termination of his employment agreement with Defendant CREDO Petroleum Corporation ("CREDO"). *Amended*

1

*Complaint* [Docket No. 16], at pp. 1-39. In a nutshell, Plaintiff alleges that he was duped into accepting employment with Defendant as Chief Operating Officer on the express understanding that he was being groomed for and would succeed Defendant James T. Huffman ("Huffman") as Chief Executive Officer of the company. *Id.* at 23. The Amended Complaint is rife with allegations of bad behavior by Huffman which evidence the extreme degree of dislike and mistrust between the individual parties. (*See, e.g., Amended Complaint* at ¶ 37: "[F]rom the outset Huffman embarked on a campaign to undermine and ultimately eliminate Pownell's candidacy for the position of CEO;" ¶ 41: "[W]ithin the first few weeks of his employment with CREDO, Huffman began keeping a 'secret file' regarding Pownell which he used and/or attempted to use to undermine Pownell's candidacy for CEO;" ¶ 46: "At this [Board] meeting, Huffman made a presentation to the Board of Directors and claimed – in a personal and unprofessional manner that was intended to embarrass, demean and humiliate Pownell — that Pownell did not have the necessary background, experience or qualifications to be CEO of CREDO;" and ¶ 49: "Thereafter, Pownell also became aware that Huffman was engaged in a campaign to materially diminish Pownell's existing position as President and COO in terms of authority, responsibility and duties.")

### B. Analysis

The dispute at issue in the Motion involves Plaintiff's request for production of "Board Books" which were distributed to Board members for two meetings of the CREDO Board of Directors held on October 22-23, 2008 and January 28-29, 2009. *Motion* at p. 3. As described by Plaintiff, "these are books of documents that CREDO prepared for each member of its Board of Directors in advance of the Board meetings." *Motion* at p.2. As

described by Defendant, "each Board Book is approximately an inch thick, consists of hundreds of pages, and contains detailed, non-public information concerning, among other things, CREDO's patented Calliope technology, operations, drilling activities, prospects, forecasts, assets, prices, investments, trading activities, and marketing efforts. The Board books are full of graphs, maps and charts detailing CREDO's historical and projected activities, as well as significant compilations and analyses of market information and data derived and accumulated from a variety of sources. In essence, the Board Books are designed to update the members of the Board of Directors on virtually every aspect of the CREDO-related events occurring during the preceding quarter of operations." *Opposition* at pp. 4-5.

**A.  The October 2008 Board Book**

Plaintiff argues that he needs a copy of the October 2008 Board Book in order to see what documents are in there. Plaintiff asserts that Huffman has criticized his work performance by alleging that Plaintiff failed to provide documents relating to his presentation at the meeting for inclusion in the Board Books. By obtaining a copy of the October 2008 Board Book, Plaintiff asserts that he may be able to rebut criticisms of his work performance and "show that other individuals failed to include documents in the Board Books but were not criticized for doing so." *Motion* at p. 5. In other words, Plaintiff wants evidence to show that Huffman's criticism of his job performance is inaccurate and/or unfair.

Defendant counters that without more specific information from Plaintiff about the "missing documents," who else supposedly failed to provide documents, what types of documents the unknown persons failed to provide and how the unknown persons were

3

allegedly treated by the company, Plaintiff is "simply fishing for facts to support some otherwise unfounded theory." *Opposition*, at p. 8. In addition, Defendant contends that Plaintiff's job performance, or any criticism thereof, is not "relevant to any issue in dispute in the case." *Id.* Defendant also asserts that it has already produced all information from the Board Books which "refers to Plaintiff in any way," and that despite multiple opportunities in multiple depositions of CREDO's Board, Plaintiff has not once asked whether certain documents were included in the October 2008 Board Book. *Id.* at 9. Finally, Defendant contends that "Plaintiff has not provided any reason why he should be given access to the vast majority of the documents in the October Board Book that have nothing to do with Plaintiff, his performance, or documents he may have provided." *Id.*

I agree with Defendant. Plaintiff must make a threshold showing of relevance in order for the Court to require production of arguably confidential documents. *Simpson v. Univ. of Colo.*, 220 F.R.D. 354, 356 (D. Colo. 2004). Although (after reading the Amended Complaint) it is not difficult to understand why discovery in the case has resulted in mud-slinging about Plaintiff's job performance, I am not convinced that such evidence has any relationship to the issues in the case. Fundamentally, Plaintiff's claims relate to whether he was defrauded into accepting a position under false assurances and whether he had "Good Reason" to resign his position, as that phrase is defined in his employment contract.[1] Plaintiff's job performance is not at issue in these claims. Because the relevancy of the information sought by Plaintiff is not readily apparent and because Plaintiff failed to sustain

---

[1] The Employment Agreement defines "Good Reason" as relating generally to diminution of Pownell's authority, reduction of his pay, relocation away from Houston, Texas, or any other material breach of the agreement by the company. #16-2 at p.4.

his burden of demonstrating relevance, the Motion to Compel production of the October 2008 Board Book is **denied.**  Fed. R. Civ. P. 26(b)(1) (information is relevant if it is "reasonably calculated to lead to the discovery of admissible evidence"); *see also Heartland Surgical Specialty Hosp., LLC v. Midwest Div., Inc.,* 2007 WL 2668742 at *11 (D. Kan. Sept. 6, 2007) (unpublished decision)(party seeking discovery has burden of establishing relevance of request which is not readily apparent).

**B.    The January 2009 Board Book**

Plaintiff contends that he needs a copy of the January 2009 Board Book to see whether Plaintiff's "Reserves presentation," which he provided to Huffman before the meeting, was included in the Board Books.  Plaintiff hypothesizes that if Huffman failed to include the "Reserves presentation," his failure shows that he "intended to terminate Plaintiff's employment in advance of the January 28-29, 2009 Board meeting."  *Motion* at p. 6.  Plaintiff further contends that the Board Book may include work that Plaintiff performed prior to the meeting, to dispute Defendant's contention that Plaintiff "went on strike and failed to perform any meaningful work prior to his resignation."  *Id.*

Defendant asserts that undisputed evidence demonstrates that Huffman directed *Plaintiff* to be sure that the "Reserves presentation" information was put into the Board Books, and that "any alleged failure to include the slides in the Board book cannot demonstrate an alleged intent by Mr. Huffman to terminate Plaintiff."  *Opposition* at p. 10. Defendant has tendered two emails in support of this contention.  The first is from Plaintiff to his assistant on January 21, 2009 referencing the presentation and stating that Plaintiff will "let [her] know if [it] needs to go in the Board book."  The second is from Huffman to Plaintiff on January 22, 2009 stating: "Be sure that the slides get into the Board Package."

*Opposition* at Exh. B.[2] Finally, Defendant argues that Plaintiff can use the emails to demonstrate that he performed work in January of 2009 and that production of the Board Book "would shed no additional light on whether Plaintiff performed the work at issue." Defendant asserts that "there simply is no basis for requiring CREDO to provide its sensitive business information to an individual who is actively seeking employment in the oil and gas industry and may go to work for one of CREDO's competitors." *Opposition* at pp. 11-12.

Again, I agree with Defendant. First, Plaintiff's assertion that the absence of the "Reserves presentation" from the Board Books implies a nefarious motive to Huffman is refuted beyond dispute by the emails provided by Defendant. If the "Reserves presentation" wasn't in the Board Books, the emails definitively foreclose a leap to the conclusion that the omission was because Huffman intended to fire Plaintiff before the meeting. Second, aside from assisting with the general mud-slinging that has apparently overtaken the more substantive issues in the lawsuit, as noted *supra*, Plaintiff has established no reason why Huffman's alleged motive to terminate him is relevant to the subject matter of the litigation. Third, the only remaining justification for production of the January 2009 Board Books (so that Plaintiff can prove that he was doing work then) is outweighed by considerations requiring protection of confidential information in these circumstances. *Simpson,* 220 F.R.D. at 359. Plaintiff has made no attempt to seek production of only those documents from the January 2009 Board Book which demonstrate

---

[2] At Plaintiff's insistence, Defendant filed a third email, dated January 22, 2009, with the Supplemental Opposition. The email is from Plaintiff to his assistant regarding the "2008 reserves analysis." It directs her to "please print this out and put it in the Board book. It is an updated version of what I sent out yesterday." *Supplemental Opposition* at Exh. C.

his work product during the relevant time period. Moreover, Plaintiff may testify about the work he was doing during that time frame and rely on the emails cited above. Accordingly, the Motion to Compel production of the January 2009 Board Book is **denied.**

### C. Expenses Pursuant to Rule 37

Pursuant to Fed. R. Civ. P. 37(a)(5)(B), I decline to award Defendant its reasonable expenses in opposing the Motion because of the email attached as Exhibit 1 to the Motion, in which defense counsel appeared to promise to produce the Board Books to Plaintiff's counsel several months ago. I take Defendant's Opposition to indicate that defense counsel subsequently changed his mind, and as set forth above, I find that production of the Board Books is not warranted here. Nevertheless, under these circumstances, it would not be appropriate to award Defendant its expenses incurred in responding to the Motion.

Dated: October 5, 2010

BY THE COURT:

　s/ Kristen L. Mix
United States Magistrate Judge
Kristen L. Mix