IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 09-cv-01540-WYD-KLM

TIMOTHY J. POWNELL, an individual,

    Plaintiff,

v.

CREDO PETROLEUM CORPORATION, a Delaware corporation, and
JAMES T. HUFFMAN, an individual,

    Defendants.

---

**ORDER**

---

**ENTERED BY MAGISTRATE JUDGE KRISTEN L. MIX**

This matter is before the Court on Plaintiff's **Oral Motion for Sanctions** (the "Motion") made during the discovery hearing held on February 28, 2011. *See Courtroom Minutes/Minute Order* [Docket No. 154]. At the hearing, the Court partially granted and partially denied the Motion. *Id.* Only two issues remain for the Court's resolution: (1) whether Defendant CREDO Petroleum Corporation ("CREDO") should be compelled to produce to Plaintiff an unredacted copy of the minutes of the February 13, 2009 meeting of its board of directors; and (2) whether CREDO should be compelled to produce to Plaintiff an unredacted copy of an email exchange, *Defendants' Document Production* [Docket No. 124-1] at 38-45, between John Rigas and James Huffman that occurred on January 25-27, 2009. CREDO has provided Plaintiff with redacted copies of both documents. Pursuant to the Court's Orders [#154 & 164], CREDO has also provided both documents to the Court for *in camera* review. In addition to an order compelling CREDO

to produce unredacted copies of both documents, Plaintiff also seeks an order sanctioning CREDO for failing produce the documents initially. CREDO contends that the redacted portions of the email exchange and the board meeting minutes are protected from disclosure to Plaintiff by the attorney-client privilege.

"[I]n diversity jurisdiction cases such as this one, state law controls the issues of privilege raised by the parties." *Elvig v. Nintendo*, No. 08-cv-02616-MSK-MEH, 2009 WL 3048445, at *2 (D. Colo. Sept. 22, 2009) (unreported decision) (citing Fed. R. Evid. 501; *Trammel v. United States*, 445 U.S. 40, 47 n.8 (1980)); *Frontier Refining, Inc. v. Gorman-Rupp Co., Inc.*, 136 F.3d 695, 699 (10th Cir. 1998) (stating that "state law supplies the rule of decision on privilege in diversity cases"). The Court of Appeals for the Tenth Circuit "has not specifically identified *which* state law applies." *Elvig*, 2009 WL 3048445, at *2. In *Frontier Refining*, the Court of Appeals concluded, without discussion, that the law of Wyoming applied to privilege issues in a case adjudicated in the District Court for the District of Wyoming. 136 F.3d at 699. It is unclear whether Wyoming law applied because the District Court was located in Wyoming or because "Wyoming law was applied at trial to resolve the claims of product liability, misrepresentation, and negligence." *Elvig*, 2009 WL 3048445, at *2; *see Dawe v. Corrections USA*, 263 F.R.D. 613, 620 n.11 (E.D. Cal. 2009) ("Federal courts sitting in diversity look to the law of the forum state in making a choice of law determination, including privileges for which state law supplies an element of a claim or defense." (citations omitted)). "Colorado courts interpreting Fed. R. Evid. 501 imply that the state law to apply is that which will likely supply the rule by which the case

will be resolved." *Id.* (citing *Shriver v. Baskin-Robbins Ice Cream Co., Inc.*, 145 F.R.D. 112, 114 n.1 (D. Colo. 1992)).

In this case, Colorado law governs Plaintiff's claims. *See Complaint* [Docket No. 1] (alleging only violations of Colorado law); *Employment Agreement* [Docket No. 1-2] at 7, ¶ 8 ("This Agreement and the legal relations hereby created between the parties hereto shall be governed by and construed under and in accordance with the internal laws of the State of Colorado[.]"). As the Court is located in Colorado, there is no choice of law issue. Colorado law governs the question of whether the email exchange and board meeting minutes at issue here are protected from disclosure by the attorney-client privilege.

Colo. Rev. Stat. § 13-90-107(1)(b) provides that an "attorney shall not be examined without the consent of his client as to any communication made by the client to him or his advice given thereon in the course of professional employment[.]" "It is well-settled in Colorado that the attorney-client privilege is 'established by the act of a client seeking professional advice from a lawyer and [it] extends only to confidential matters communicated by or to the client in the course of gaining counsel, advice, or direction with respect to the client's rights or obligations.'" *Wingerter v. Gerber*, No. 09-cv-02000-PAB-MEH, 2010 WL 5464734 at *2 (Dec. 29, 2010) (unreported decision) (quoting *People v. Tucker*, 232 P.3d 194, 198 (Colo. App. 2009)). Importantly, the "privilege applies *only* to communications under circumstances giving rise to a reasonable expectation that the communications will be treated as confidential." *Id.* (citing *Tucker*, 232 P.3d at 198); *see also Wildearth Guardians v. U.S. Forest Service*, 713 F. Supp. 2d 1243, 1265 (D. Colo. 2010) ("Only confidential information is protected by the privilege; if the information has

been or is later shared with third parties, the privilege does not apply." (citations omitted)). The privilege must be strictly construed because it obstructs "'the rightful search for truth.'" *W. Fire Truck, Inc. v. Emergency One, Inc.*, 134 P.3d 570, 574 (Colo. App. 2006) (quoting *Petro-Lewis Corp. v. Dist. Court*, 727 P.2d 41, 43 (Colo. 1986)).

These principles of Colorado law regarding the attorney-client privilege provide the basis for the Court's analysis. However, Colorado case law does not provide comprehensive guidance on whether the attorney-client privilege protects documents like those at issue here. Thus, the Court must look to persuasive case law from other jurisdictions for guidance.

"Because the privilege promotes the 'dissemination of sound legal advice,' it applies only where the advice is legal in nature, and not where the lawyer provides non-legal business advice." *Faloney v. Wachovia Bank, N.A.*, 254 F.R.D. 204, 209 (E.D. Pa. 2008) (quoting *Wachtel v. Health Net, Inc.*, 482 F.3d 225, 231 (3d Cir. 2007)); *Kramer v. Raymond Corp.*, Civ. No. 90-5026, 1992 WL 122856, at *1 (E.D. Pa. May 29, 1992) (unreported decision) ("Business communications are not protected merely because they are directed to an attorney, and communications at meetings attended or directed by attorneys are not automatically privileged as a result of the attorney's presence."). Thus, when a corporation seeks to invoke the attorney-client privilege to protect a document from disclosure, it "must clearly demonstrate that the communication in question was made for the express purpose of securing legal not business advice." *Aamco Transmissions, Inc. v. Marino*, Civ A. Nos. 88-5522, 88-6197, 1991 WL 193502, at *3 (E.D. Pa. Sept. 24, 1991) (unreported decision). Just as the attorney-client privilege does not protect

communications related to business advice, it also does not protect from disclosure the "background facts" underlying communications between an attorney and his client. *Stoeffels v. SBC Comm'cns, Inc.*, 263 F.R.D. 406, 414 (W.D. Tex. 2009); *see Upjohn Co. v. United States*, 449 U.S. 383, 395-96 (1981).

### A.   Board Meeting Minutes

Defendants contend that the board meeting minutes are protected by the attorney-client privilege because CREDO's "company legal counsel," Mr. Les Woodward, attended the meeting in order to provide advice regarding Securities and Exchange Commission regulations governing proxy statement disclosures.

"[T]he mere fact that an attorney attended a meeting does not render everything said or done at that meeting privileged." *Miner v. Kendall*, No. 96-1126-MLB, 1997 WL 695587, at *1 (D. Kan. Sept. 17, 1997) (unreported decision); *Hinsdale v. City of Liberal, Kan.*, 961 F. Supp. 1490, 1494 (D. Kan. 1997) ("The mere fact that clients were at a meeting with counsel in which legal advice was being requested and/or received does not mean that everything said at the meeting is privileged."). "For communications at [a meeting] to be privileged, they must have related to the acquisition or rendition of professional legal services." *Hinsdale*, 961 F. Supp. at 1494.

In this case, the Court has previously ruled that Defendants must provide to Plaintiff only those portions of the board meeting minutes "which refer to discussions about Plaintiff." *Order* [Docket No. 99] at 5. After reviewing the minutes, the Court finds that only six small portions of the minutes relate "to the acquisition or rendition of professional legal services" and are thus protected from disclosure by the attorney-client privilege. *Hinsdale*,

961 F. Supp. at 1494. The remainder of the minutes must be disclosed. Accordingly,

IT IS HEREBY **ORDERED** that a copy of the minutes of CREDO's February 13, 2009 board meeting is provided to Plaintiff in the form attached hereto as Exhibit 1.

The Court finds that Defendants' failure to initially produce an appropriately redacted copy of the board meeting minutes was the result of inadvertence or a good faith belief that the entire document was privileged. *See Jaramillo v. Adams County Sch. Dist. 14*, No. 09-cv-02243-RPM-MEH, 2010 WL 1839329, at *2 (D. Colo. May 6, 2010) (unreported decision) ("any designation of confidentiality must be made in good faith; if a party abuses her or its obligation to do so in good faith, such abuse may be subject to sanctions"). Accordingly,

IT IS FURTHER **ORDERED** that Plaintiff's Motion is **DENIED** to the extent that it seeks sanctions against Defendants for failing to initially produce an appropriately redacted copy of the board meeting minutes.

B.  **Email Exchange**

Defendants contend that the email exchange between John Rigas and James Huffman is protected by the attorney-client privilege because CREDO's counsel, John Elofson, was a carbon copy recipient of every email in the exchange. The first email in the exchange was sent by John Rigas on January 25, 2009 at 2:42 p.m. *Defendants' Document Production* [#124-1] at 38. Defendants argue that Mr. Rigas added Mr. Elofson as a carbon copy recipient of this email because he wanted Mr. Elofson's advice regarding the issues raised in the email. Thus, Defendants argue, the act of adding Mr. Elofson as a carbon copy recipient was a solicitation "of advice or direction with respect to [CREDO]'s

rights and obligations." *Tucker*, 232 P.3d at 198. At the February 28 hearing, Defendants offered to provide an affidavit from Mr. Rigas in which he would state that he added Mr. Elofson as a carbon copy recipient of his email because he wanted Mr. Elofson's advice and direction. *See Zelaya v. UNICCO Serv. Co.*, 682 F. Supp. 2d 28, 38 (D.D.C. 2010) (stating that a claim of attorney-client privilege protection can be supported with "sworn statements testifying to fulfillment of the elements required for the privilege" to attach).

The Court disagrees with Defendants, and finds that they have not carried their burden of establishing that the email exchange is protected by the attorney-client privilege. After reviewing the email exchange *in camera*, the Court finds that the email messages were not "made for the *express* purpose of securing legal" advice. *Aamco*, 1991 WL 193502, at *3 (emphasis added). Accordingly, an affidavit stating Mr. Rigas's intent would be insufficient to establish attorney-client privilege protection. The content of the initial email, which was sent from Mr. Rigas to Mr. Huffman on Sunday, January 25, 2009 at 2:42 p.m., was expressly directed at Mr. Huffman. Mr. Rigas made requests of Mr. Huffman and discussed Plaintiff's credentials. It is clear from the face of this message that it is primarily a business communication between corporate directors and not a solicitation of legal advice. *See Stoffels*, 263 F.R.D. at 416 ("While these emails pertain to [the issues in the case], they are not, for the most part, directed to legal counsel."). Although Mr. Rigas added Mr. Elofson as a carbon copy recipient of the email, the Court finds that this action merely communicated to Mr. Elofson "background facts," which are not protected by the attorney-client privilege. The email does not expressly or implicitly request counsel, advice, or direction from Mr. Elofson with respect to CREDO's legal rights or obligations. *See id.*

at 414; *but see Chevron U.S.A., Inc. v. United States*, 83 Fed. Cl. 195, 204 (2008). ("[S]ince [the email] was copied to [the corporation's attorney], it could be construed to request legal advice and is subject to the attorney-client privilege[.]"); *United States v. ChevronTexaco Corp.*, 241 F. Supp. 2d 1065, 1077 (N.D. Cal. 2002) ("Materials, transmitted between nonlawyers, that reflect matters about which the client intends to seek legal advice are comparable to notes a client would make to prepare for a meeting with her lawyer – notes which could serve as an agenda or set of reminders about things to ask or tell counsel. It would undermine the purpose of the attorney-client privilege not to extend protection to such notes. Therefore, internal communications that reflect matters about which the client intends to seek legal advice are protected.").

Moreover, the attorney-client privilege applies "only where necessary to achieve its purpose," i.e., "it protects only those [communications] . . . which might not have been made absent the privilege." *Fisher v. United States*, 425 U.S. 391, 403 (1976). In this case, nothing about the initial email sent from Mr. Rigas to Mr. Huffman indicates that it would not have been sent if Mr. Rigas knew it was not protected by the attorney-client privilege. Thus, the Court concludes that those portions of the email exchange that are both relevant and not protected by the attorney-client privilege must be disclosed. Accordingly,

IT IS FURTHER **ORDERED** that a copy of the email exchange is provided to Plaintiff in the form attached hereto as Exhibit 2.

Again the Court finds that Defendants' failure to initially produce an appropriately redacted copy of the email exchange was the result of inadvertence or a good faith belief

that the entire exchange was privileged. See *Jaramillo*, 2010 WL 1839329, at *2. Accordingly,

IT IS FURTHER **ORDERED** that Plaintiff's Motion is **DENIED** to the extent that it seeks sanctions against Defendants for failing to produce an appropriately redacted copy of the email exchange.

C. **Conclusion**

As set forth above, Plaintiff's Oral Motion for Sanctions is **GRANTED in part** and **DENIED in part**.

DATED: March 17, 2011 at Denver, Colorado.

BY THE COURT:

s/ Kristen L. Mix
Kristen L. Mix
United States Magistrate Judge